**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | CRIM. NO. 1:20-CR-67 |
| | : | |
| v. | : | |
| | : | **(Judge Wilson)** |
| | : | |
| | : | **(Magistrate Judge Carlson)** |
| **CARLOS JOEL NIEVES ORTEGA** | : | |

## MEMORANDUM AND ORDER

### I.    Introduction

The defendant in this case is a daily poly-substance drug abuser with multiple charges pending in various state and federal courts in Pennsylvania, Maryland and New York. This drug use and abuse reportedly spans almost two decades. In addition to this pattern of drug use, the defendant suffers from mental health issues that, at times, have been severe. In spite of this history, this case comes before us for consideration of a motion for temporary release of the defendant filed pursuant to 18 U.S.C. § 3142(i), which provides that:

> The judicial officer may, . . ., permit the temporary release of the person, in the custody of a United States marshal or another appropriate person, to the extent that the judicial officer determines such release to be necessary for preparation of the person's defense or for another compelling reason.

18 U.S.C. § 3142 (i).

In the instant case, the "compelling reason" which the defendant asserts justifies the defendant's temporary release from pre-trial detention is the COVID-19

pandemic that is sweeping the nation, and the dangers of infection which may result from close confinement in a custodial setting. This motion is fully briefed by the parties, and we have afforded all parties the opportunity to make evidentiary presentations in support of their respective positions regarding temporary release for the defendant. Therefore, this motion is ripe for resolution.

We acknowledge the gravity of the defendant's concerns, which are shared by all Americans as this nation faces a pandemic without precedent in the past century of our nation's history. In addressing the instant motion, we must assess these individual medical concerns, apply the legal benchmarks mandated by Congress, and weigh these concerns against the important societal interests promoted by the Bail Reform Act, which calls for the detention of those defendants who present a danger to the community. Having conducted an individualized assessment of the facts and circumstances presented in this case, for the reasons set forth below it is ordered that the motion for temporary release is DENIED.

## II. Factual Background and Procedural History

On March 4, 2020, the defendant was charged with conspiracy to distribute and possess with intent to distribute cocaine hydrochloride and two counts of attempted possession with intent to distribute cocaine hydrochloride in violation of 21 U.S.C. § 846. Following the defendant's arrest, the United States moved pursuant

to 18 U.S.C. § 3142 to detain the defendant pending trial. Initial proceedings and a detention hearing were then conducted in this case on March 16, 2020.

At the time of these initial proceedings, the probation office prepared a comprehensive pre-trial services report, which provided the following information concerning the defendant's social and medical history, prior history of substance abuse, and criminal record: the defendant was born and raised in Puerto Rico, but has resided in York, Pennsylvania for the past three years. His Pennsylvania driver's license is currently suspended. He reports living with his paramour and their two children, and that his oldest son from a prior relationship lives in Puerto Rico. The defendant purports to be self-employed as a mechanic and in good physical health with no medical problems. However, despite his good physical health, the defendant reported a lengthy history of daily poly-substance drug use and abuse dating back to age 17. These substances include alcohol, cannabinoids, cocaine, and prescription opiates.

In addition to his reported substance abuse, the defendant suffers from mental health issues, including depression and emotional problems for which he has sought treatment and has been hospitalized on at least eight occasions. Specifically, the defendant reported that he attended mental health and substance abuse counselling on an outpatient basis in recent years, but had voluntarily ceased this treatment

approximately one year ago. He reported taking antidepressants in the past, but is not currently taking any medication.

Further, the pre-trial services report indicated that the defendant had been arrested on drug trafficking, and money laundering charges by state and federal authorities in Pennsylvania, Maryland and New York. The report also indicated that Ortega had incurred some of these criminal charges while on release from other pending cases.

Following a hearing, we ordered the defendant detained pursuant to 18 U.S.C. § 3142, finding that the defendant presented a risk of flight and danger to the community, and that there was no condition or combinations of conditions which could assure the safety of the community or the defendant's appearance in court as required. On this score, we specifically found that the following factors supported the pre-trial detention of the defendant: the presumption in favor of detention, which the defendant was unable to overcome; the weight of the evidence against the defendant is strong; he would be subject to a lengthy period of incarceration if convicted; his history of alcohol or substance abuse; and his lack of significant community or family ties to this district.

The instant motion for temporary release does not focus upon or directly challenge any of these initial detention findings or determinations. Instead, the defendant's motion for release rests upon a concern shared by all: the risk of

infection due to the current coronavirus pandemic. As the defendant notes, this risk of community spread is heightened in a custodial setting, where the very nature of confinement limits the ability of individuals to engage in the type of social isolation that is recommended to curb the spread of this disease. Beyond this generalized concern, the defendant cites scant information which would provide a basis for a finding that he possesses specific and individualized factors which heighten these medical concerns in the instant case. To the contrary, the defendant has stated that he is in good physical health with no medical conditions.

The Government, in turn, opposes this motion since Ortega has not carried his burden of proof and persuasion under § 3142(i) to justify temporary release. In addition, the defendant has been arrested as a coconspirator with his proposed third-party custodian relating to money laundering charges originating in New York, thus rendering his release to this individual inappropriate. Simply stated, the Government asserts that the defendant has not overcome the presumption in favor of his detention. We agree.

### III. Discussion

#### A. Temporary Release Under 18 U.S.C. § 3142

While cast as a motion seeking temporary release under 18 U.S.C. § 3142 (i), this motion is best understood and evaluated in the context of the Bail Reform Act as a whole. In the Bail Reform Act, 18 U.S.C. § 3141, *et seq.*, Congress created a

comprehensive set of statutory guidelines governing release and detention decisions for criminal cases in federal court. As one court has recently observed:

> Before this Court can turn to the analysis under 18 U.S.C. § 3142(i), it is essential to look at the overarching structure of the statute. The fundamental precept of the Bail Reform Act mandates the release of individuals so long as the court can be reasonably assured the defendant does not pose a flight risk or danger to the community. 18 U.S.C. § 3142. To the extent that conditions, or a combination of conditions, can be fashioned to reasonably provide such assurances, the individual must be released, as detention is "the carefully limited exception." Id.; see also United States v. Salerno, 481 U.S. 739, 755 (1987).
>
> In assessing what conditions, if any, can be fashioned, judges are directed to take into account available information pertaining to the factors identified under 18 U.S.C. § 3142(g). Those factors include the nature and circumstances of the offense charged, including whether it involves controlled substances or firearms; the weight of the evidence against the defendant; the defendant's history and characteristics (including history relating to drug abuse, defendant's criminal history, and record of appearing at court proceedings); whether the detainee was on probation, parole, or other court supervision at the time of the allegedly offensive conduct; and the nature and seriousness of the danger to any person or the community posed by the defendant's release. 18 U.S.C. § 3142(g). Ultimately, the information provided in each case aids in the individualized assessment that will result in the release or the detention of the person.

United States of America v. Cox, 2020 WL 1491180, *2 (D. Nev. Mar. 27, 2020).

Beyond this individualized assessment mandated by law, the Bail Reform Act also enjoins us to weigh release and detention decisions against a series of statutory presumptions. Principal among these presumptions which guide us in this custodial calculus are a series of statutory presumptions in favor of detention for defendants charged with violent crimes, serious drug trafficking offenses, or crimes involving

the sexual exploitation of the most vulnerable in society, our children. As to these defendants, "[s]ubject to rebuttal by the person, it shall be presumed that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of the community if the judicial officer finds that there is probable cause to believe that the person committed," one of these enumerated offenses. 18 U.S.C. § 3142 (e)(3). In this regard, it is also well-settled that an "indictment [charging an enumerated offense] is sufficient to support a finding of probable cause triggering the rebuttable presumption of dangerousness under § 3142(e)." United States v. Suppa, 799 F.2d 115, 119 (3d Cir. 1986).

Cast against this comprehensive statutory scheme prescribing the procedure for making initial bail and detention decisions, § 3142(i) constitutes a limited safety valve provision, enabling courts to re-examine detention decisions "to the extent that the judicial officer determines such release to be necessary for preparation of the person's defense or for another compelling reason." 18 U.S.C. § 3142 (i). Until recently, there was a relative paucity of case law construing for us what would constitute a "compelling reason" justifying the temporary release of a previously detained defendant. Of late, however, a rising tide of case law has construed the meaning and reach of § 3142(i) in the context of continuing custody decisions in the age of coronavirus.

From these cases a few guiding principles have emerged. First, the very nature of the standard prescribed by statute—which requires a showing of some "compelling reason" to warrant temporary release from custody—suggests that such motions must meet exacting standards and "the few courts that have ordered temporary release on the basis of such a condition have done so only 'sparingly' and typically in order 'to permit a defendant's release where, for example, he is suffering from a terminal illness or serious injuries[,]' " United States of America v. Lee, No. 19-CR-298 (KBJ), 2020 WL 1541049, at *3 (D.D.C. Mar. 30, 2020) (quoting United States v. Hamilton, No. 19-CR-54-01, 2020 WL 1323036, at *2 (E.D.N.Y. Mar. 20, 2020)).

Second, like the initial decision to detain, a determination of whether a movant has shown compelling reasons justifying temporary release is an individualized judgment which takes into account the unique circumstances of each case and each defendant. Thus, courts have allowed for temporary release where a defendant's specific circumstances presented a compelling and immediate need for release. For example, release of a defendant is permitted under § 3142(i) when that defendant is suffering from a terminal illness or serious injuries. See, e.g., United States v. Scarpa, 815 F. Supp. 88 (E.D.N.Y. 1993) (permitting release of defendant suffering from terminal AIDS that could no longer be managed by correctional authorities); see also United States v. Cordero Caraballo, 185 F. Supp. 2d 143 (D.P.R. 2002)

(permitting release where defendant sustained "serious" and "grotesque" gunshot wounds, suffered a heart attack, underwent an emergency tracheotomy, was partially paralyzed, could not use his hands, and had open and infected wounds about his body, and where the United States Marshal's Service reused to take custody of him until his wounds closed).

There is a necessary corollary to this principle, calling for an individualized and specific showing of a compelling reason to satisfy the movant's burden of proof under § 3142(i). Cases construing § 3142(i) generally "have rejected emergency motions for release of otherwise healthy and potentially violent defendants based solely on the generalized risks that COVID-19 admittedly creates for all members of our society." United States v. Lee, No. 19-CR-298 (KBJ), 2020 WL 1541049, at *6 (D.D.C. Mar. 30, 2020) (citing United States v. Cox, No. 19-cr-271, 2020 WL 1491180 (D. Nev. Mar. 27, 2020)); United States v. Green, No. 19-cr-304, 2020 WL 1477679 (M.D. Fla. Mar. 26, 2020); United States v. Steward, No. 20-cr-52, 2020 WL 1468005 (S.D.N.Y. Mar. 26, 2020); United States v. Hamilton, No. 19-cr-54, 2020 WL 1323036 (E.D.N.Y. Mar. 20, 2020); see also United States v. Clark, No. 19-40068-01-HLT, 2020 WL 1446895, at *3 (D. Kan. Mar. 25, 2020). Rather, at a minimum courts have typically required proof of a "[d]efendant's particular vulnerability to the disease [in order to] constitute a compelling reason for release under § 3142(i)." United States of Am. v. Keith Kennedy, No. 18-20315, 2020 WL

1493481, at *4 (E.D. Mich. Mar. 27, 2020), reconsideration denied sub nom. United States v. Kennedy, No. 18-20315, 2020 WL 1547878 (E.D. Mich. Apr. 1, 2020).

The United States Court of Appeals for the Third Circuit has very recently underscored for us the necessity of a more particularized showing of a compelling need for release beyond proof of the generalized risks posed by COVID-19 when a prisoner seeks release from jail. Addressing this question in another custodial setting, petitions for compassionate release from custody, the court of appeals stated in terms that are equally applicable here that:

> We do not mean to minimize the risks that COVID-19 poses in the . . . prison system, particularly for inmates . . . . But the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify . . . release.

United States of America v. Raia, No. 20-1033, 2020 WL 1647922, at *2 (3d Cir. Apr. 2, 2020).

Finally, any determination of whether a movant has established compelling reasons which now warrant temporary release from custody must take into account the important considerations of public safety and flight which animated the original decision to detain the offender pending trial. Thus, "in considering the propriety of temporary release, the court would need to balance the reasons advanced for such release against the risks that were previously identified and resulted in an order of detention." United States of America v. Cox, 2020 WL 1491180, *2 (D. Nev. Mar. 27, 2020). In practice, therefore, a decision on a motion seeking release under

§ 3142(i) entails an informed judgment assessing both individual health concerns and broader public safety interests. In reaching these judgments the court must:

> [E]valuate at least the following factors: (1) the original grounds for the defendant's pretrial detention, (2) the specificity of the defendant's stated COVID-19 concerns, (3) the extent to which the proposed release plan is tailored to mitigate or exacerbate other COVID-19 risks to the defendant, and (4) the likelihood that the defendant's proposed release would increase COVID-19 risks to others. The court will not necessarily weigh these factors equally, but will consider them as a whole to help guide the court's determination as to whether a "compelling reason" exists such that temporary release is "necessary."
> § 3142(i)

United States v. Clark, No. 19-40068-01-HLT, 2020 WL 1446895, at *3 (D. Kan. Mar. 25, 2020).

It is against this statutory backdrop that we evaluate the instant request for temporary release from custody.

### B. **The Defendant's Motion for Temporary Release Will Be Denied.**

Our analysis of this motion begins with the proposition that "[w]hile the COVID-19 pandemic has given rise to exceptional and exigent circumstances that require the prompt attention of the courts, it is imperative that they continue to carefully and impartially apply the proper legal standards that govern each individual's particular request for relief." United States v. Roeder, No. 20-1682, 2020 WL 1545872, at *3 (3d Cir. Apr. 1, 2020). In this case, our careful and impartial application of the legal standards mandated by § 3142(i), requires us to assess both the public safety grounds for the defendant's initial detention as well as:

11

(1) the specificity of the defendant's stated COVID-19 concerns; (2) the extent to which the proposed release plan is tailored to mitigate or exacerbate other COVID-19 risks to the defendant; and (3) the likelihood that the defendant's proposed release would increase COVID-19 risks to others.

Turning first to an individualized evaluation of the defendant's COVID-19 concerns, our assessment begins with a recognition of the unprecedented health care crisis presented by the coronavirus pandemic. However, it is clear that under § 3142(i), we cannot grant release of a defendant previously deemed to be a danger to public safety or a risk of flight "based solely on the generalized risks that COVID-19 admittedly creates for all members of our society." United States v. Lee, No. 19-CR-298 (KBJ), 2020 WL 1541049, at *6 (D.D.C. Mar. 30, 2020). In this case, beyond a genuine, but generalized, concern regarding the risks created by COVID-19, the defendant provides very little to support an individualized finding that there is a compelling medical reason for his release. Quite the contrary, he has asserted that he is in good health, and such assertion is supported by the testimony of his proposed third-party custodian, who testified that the defendant does not have any medical problems. Thus, the defendant has failed to make the threshold individualized showing necessary to secure release under § 3142(i).

We must then weigh those specific health concerns against the substantial public safety considerations which led us to order the defendant's detention in the

first instance. In this case, the following factors, unique to the defendant, compelled the decision to detain the defendant as a risk of flight and danger to the community: the presumption in favor of detention, which the defendant was unable to overcome; the strength of the weight of the evidence against the defendant; he would be subject to a lengthy period of incarceration if convicted; his history of alcohol or substance abuse; and his lack of significant community or family ties to this district. Thus, the public safety concerns which animate any decision under the Bail Reform Act continue to weigh heavily in favor of the defendant's detention pending trial.

The defendant also raises Eighth Amendment concerns relating to his incarceration in a custodial setting during this pandemic. This argument fails as a matter of law for several reasons. At the outset, Ortega's reliance upon the Eighth Amendment is misplaced. As a legal matter it is well-settled that "[p]retrial detainees are not within the ambit of the Eighth Amendment but are entitled to the protections of the Due Process clause." Boring v. Kozakiewicz, 833 F.2d 468, 471 (3d Cir. 1987). We note that the defendant is a pretrial detainee, and as such, does not have a claim under the Eighth Amendment regarding the conditions at Dauphin County Prison. See Graham v. Connor, 490 U.S. 386, 392 n. 6, 109 S. Ct. 1865, 104 L. Ed. 2d 443 (1989) (holding that "the Eighth Amendment's Cruel and Unusual Punishments Clause does not apply until 'after sentence and conviction' "); Hubbard v. Taylor, 399 F.3d 150, 166 (3d Cir. 2005). Rather, a pretrial detainee's claims

13

regarding the conditions of his confinement fall within the ambit of the Fifth Amendment's Due Process clause, and the proper inquiry is "whether [the conditions of confinement] amount to punishment of the detainee." Bell v. Wolfish, 441 U.S. 520, 535, 99 S. Ct. 1861, 60 L. Ed. 2d 447 (1979); see also Davis v. City of Philadelphia, 284 F. Supp. 3d 744, 752 (E.D. Pa. 2018); Umarbaev v. Lowe, 2020 U.S. Dist. LEXIS 62435 (M.D. Pa. April 9, 2020) (Kane, J.).

On this score, it is well-settled that pretrial detention under 18 U.S.C. § 3142, on its face, does not violate the Fifth Amendment Due Process Clause. United States v. Salerno, 481 U.S. 739, 742, 107 S. Ct. 2095, 95 L. Ed. 2d 697 (1987). Rather, only when the conditions amount to punishment, and the detention is not reasonably related to a legitimate penological goal, are a pretrial detainee's due process rights violated. See Bell, 441 U.S. at 539; Hubbard, 399 F.3d at 159-60. Thus, "[a]bsent showing of an expressed intent to punish on the part of the detention facility officials, . . . if a particular condition or restriction of pretrial detention is reasonably related to a legitimate governmental objective, it does not, without more, amount to 'punishment.' " United States v. Cook, No. 3:16-CR-312, 2020 U.S. Dist. LEXIS 70595 (M.D. Pa. April 22, 2020) (Mehalchick, M.J.) (quoting Bell, 441 U.S. at 538-39). Specifically, in the context of the recent COVID-19 pandemic, several courts have declined to hold that a pretrial detainee's due process rights are violated simply because they are incarcerated and at a higher risk of contracting the virus. See e.g.,

14

Cook, No. 3:16-CR-312, 2020 U.S. Dist. LEXIS 70595 (M.D. Pa. April 22, 2020) (Mehalchick, M.J.); United States v. Frost, 2020 WL 1899561, at *4 (E.D. Mich. April 17, 2020); United States v. Leake, 2020 WL 1905150, at *5 (D.D.C. April 17, 2020); United States v. Stevens, 2020 WL 1888968, at *5 (E.D. Pa. April 16, 2020).

Here, the defendant asserts that the conditions at Dauphin County Prison are inadequate and further expose pretrial detainees to the dangers of contracting COVID-19. While a number of the conditions alleged by Ortega would clearly be uncomfortable and unpleasant, nothing in Ortega's presentation supports an inference that prison officials are imposing these conditions on the defendant as a punitive measure. Quite the contrary, we have received updates from the warden of Dauphin County Prison that outline the precautionary steps taken by prison officials to combat the contraction and spread of COVID-19 in the prison which comply with CDC guidance. Thus, we find that the defendant has not shown that the conditions of his confinement at Dauphin County Prison have violated his right to Due Process under the Fifth Amendment.

Further, even if we accepted Ortega's invitation to assess these prison conditions under the Eighth Amendment, this claim would still fail. Under the Eighth Amendment, a prisoner's rights are violated when prison officials are deliberately indifferent to a serious risk of harm. Farmer v. Brennan, 511 U.S. 825, 834, 114 S. Ct. 1970, 128 L. Ed. 2d 811 (1994). In short, when "analyzing deliberate

indifference, a court must determine whether the prison official 'acted or failed to act despite his knowledge of a substantial risk of harm.' A prisoner plaintiff must prove that the prison official 'knows of and disregards an excessive risk to inmate health or safety.' " Garvey v. Martinez, 2010 WL 569852, at *6 (M.D. Pa. Feb. 11, 2010) (quoting Farmer, 511 U.S. at 837, 841)). As we have noted:

> "When an Eighth Amendment claim arises in the context of a challenge to conditions of confinement, we must determine if prison officials acted with 'deliberate indifference' to the inmate's health. Farmer v. Brennan, 511 U.S. 825, 837, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994). The objective inquiry is whether the inmate was 'denied the minimal civilized measure of life's necessities.' Hudson, 503 U.S. at 9, 112 S.Ct. 995, 117 L.Ed.2d 156." Fuentes v. Wagner, 206 F.3d 335, 345 (3d Cir. 2000).

Smith v. Donate, No. 4:10-CV-2133, 2012 WL 3537017, at *13 (M.D. Pa. June 15, 2012), report and recommendation adopted, No. 4:10-CV-2133, 2012 U.S. Dist. LEXIS 114825 (M.D. Pa. Aug. 15, 2012). Further, it is undeniably clear that "the Constitution does not mandate comfortable prisons." Rhodes v. Chapman, 452 U.S. 337, 349, 101 S. Ct. 2392, 2400, 69 L. Ed. 2d 59 (1981). Judged by these exacting standards, Ortega's Eighth Amendment conditions of confinement claims fail. Here, the evidence rebuts any claim of deliberate indifference to inmate needs by prison staff. Quite the contrary, the prison has taken steps sanctioned by the CDC to ensure inmate safety. Indeed, this is the most any of us can do in this unprecedented pandemic. To the extent that Ortega is requesting individualized special treatment above and beyond these precautionary measures, his request is denied.

Finally, we note that this very general and sweeping argument attacking custodial conditions at this facility is in our estimation simply too broad in its reach to constitute the type of specific compelling reason for release contemplated by § 3142(i). Indeed, if we embraced the view espoused here by Ortega, we would be compelled to release all detainees housed at this facility simply because of the general conditions of their confinement. Since Ortega has not shown that those conditions of confinement are imposed in a punitive manner or deny detainees the minimal civilized measure of life's necessities, we will decline this invitation.

### IV. Conclusion

Weighing and balancing these countervailing considerations we conclude that the defendant's motion for temporary release pursuant to 18 U.S.C. § 3142(i) will be DENIED. "Because the Court is mindful that both the conditions in . . . jail and the COVID-19 pandemic itself are both rapidly evolving, it will entertain a renewed request for release if—at some point in the future—it becomes clear" that there are compelling reasons that justify the defendant's release. United States of America v. Lee, No. 19-CR-298 (KBJ), 2020 WL 1541049, at *7 (D.D.C. Mar. 30, 2020). Therefore, this order is entered without prejudice to renewal of this motion at some future date should the defendant's circumstances materially change.

An appropriate order follows.

So ordered this 4th day of June 2020.

      */s/ Martin C. Carlson*
      Martin C. Carlson
      United States Magistrate Judge

# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **CRIM. NO. 1:20-CR-67** |
| | : | |
| **v.** | : | |
| | : | **(Judge Wilson)** |
| | : | |
| | : | **(Magistrate Judge Carlson)** |
| **CARLOS JOEL NIEVES ORTEGA** | : | |

## **ORDER**

In accordance with the accompanying Memorandum Opinion, the defendant's motion for temporary release pursuant to 18 U.S.C. § 3142(i) is DENIED. "Because the Court is mindful that both the conditions in . . . jail and the COVID-19 pandemic itself are both rapidly evolving, it will entertain a renewed request for release if—at some point in the future—it becomes clear" that there are compelling reasons that justify the defendant's release. United States of America v. Lee, No. 19-CR-298 (KBJ), 2020 WL 1541049, at *7 (D.D.C. Mar. 30, 2020). Therefore, this order is entered without prejudice to renewal of this motion at some future date should the defendant's circumstances materially change.

So ordered this 4th day of June 2020.

                                                 */s/ Martin C. Carlson*
                                                 Martin C. Carlson
                                                 United States Magistrate Judge